UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
United States of America ex rel.
Vincent Forcier,

                Plaintiff,

       v.                             12 Civ. 1750 (DAB)
                                      MEMORANDUM AND
                                      ORDER

Computer Sciences Corporation and
The City of New York,

                Defendants.
-------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     In this qui tam action, Intervenors United States of
America ("U.S." or the "Government") and the State of New York
("N.Y." or the "State") (collectively, "Intervenors") allege
that Defendants the City of New York (the "City") and Computer
Sciences Corporation ("CSC" or "Defendant") violated the federal
False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and the New
York False Claims Act ("NY FCA"), N.Y. Finance Law §§ 187 et
seq., by submitting false claims to Medicaid for reimbursement.
CSC filed a Counterclaim against the State seeking contribution
or indemnification if it is found liable to the Government on
the relief sought in the Government's Complaint. The State now
moves to dismiss CSC's counterclaim under Fed. R. Civ. P.
12(b)(1) and 12(b)(6). For the reasons described below, the
State's Motion is GRANTED in part and DENIED in part.

1. Background

The facts in this case have been discussed at length in prior decisions addressing Defendant's Motions to Dismiss, and will not be repeated here.

On August 10, 2017 the Court filed an Order granting in part and denying in part Defendant's Motion to Dismiss Intervenors' Amended Complaints-in-Intervention[1] and ordering CSC to respond to the Amended Complaints-in-Intervention. On January 1, 2018, CSC filed an Answer to the Government's Amended Complaint-in-Intervention. (ECF No. 132.) On the same day, CSC also filed an Answer to the State's Amended Complaint-in-Intervention, along with a Counterclaim. (ECF No. 133, "CSC Opp'n")

In its Counterclaim, Defendant claims that the State, through New York State Department of Health ("NYSDOH"), provided Defendant[2] with directions regarding the submission of claims to Medicaid and the codes to be used on these claims, and that the

---

[1] Specifically, the Court dismissed the Intervenors' implied certification claims based on the incentive payment provisions in CSC's contract with the City, but denied CSC's motion in all other respects. (August 10, 2017 Memorandum and Order at 39.)

[2] The State allegedly provided these instructions to CSC's corporate predecessor, CSC Covanys. The Court refers to both CSC and CSC Covanys as "CSC" or "Defendant" throughout.

so-called 9Nine and 0Fill Schemes[3] at the heart of the Intervenors FCA claims arose as a result of, and in conformance with, these directions. Part of these instructions were allegedly based on a NYSDOH database known as "KIDS," which the State allegedly instructed Defendant to use in its claim submission process. Defendant alleges that the State knew or should have known both of its use of these practices and of the nature of its compensation arrangement with the City.

As a result of the State's alleged involvement in and endorsement of the 9Nine and 0Fill schemes, CSC seeks contribution or indemnity from the State if CSC is found liable to the Government for any of the relief sought in the Government's Complaint.

---

[3] Briefly, under the 9Nine Scheme, Defendant allegedly submitted claims to private insurers for children with evidence of private coverage—but inaccurate or incomplete policy numbers—by filling nine "9s" into the policy number field on the claims, instead of obtaining the correct policy numbers prior to submission. (August 10, 2017 Memorandum & Order at 9-10.) Under the 0Fill scheme, Defendant is alleged to have identified claims that had been pending before a private insurer for a certain number of months and then submitted the claim to Medicaid with a "0Fill" modifier, which was intended for situations where private coverage did not exist or had been denied. (Id. at 10.)

2. Discussion

    a. 12(b)(1)

        i. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first." United States v. N.Y.C. Dep't of Hous., Pres. & Dev., No. 09 Civ. 6547(BSJ), 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012) (quoting Rhulen Agency, Inc. v. A.L. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)); see also Stahl York Ave. Co., LLC v. City of New York, No. 14 Civ. 7665(ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015).

When resolving issues of subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits and exhibits. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Zappia Middle East Const. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). A court must generally "accept the material factual allegations in the complaint as true, but does not draw all reasonable inferences in the plaintiff's favor."

4

Figueroa v. Ministry for Foreign Affairs of Sweden, 16-cv-00682 (JGK), 222 F.Supp.3d 304, 307, 2016 WL 6952300, at *1 (S.D.N.Y. Nov. 28, 2016). However, "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir.2004) (citation and quotation marks omitted).

### ii. Analysis

The State claims that, under the Eleventh Amendment and similar principles of sovereign immunity under New York state law[4], it is immune to CSC's counterclaim. While the State acknowledges that there is an exception to sovereign immunity—commonly characterized as a "waiver"—for counterclaims sounding in recoupment, it argues that CSC's counterclaim for contribution/indemnification does not fit within the parameters of this exception. CSC, for its part, argues that the scope of this waiver to immunity is not limited solely to recoupment counterclaims, but extends to all compulsory counterclaims. CSC also argues that any recoupment limitation applies only to *federal* sovereign immunity, while state sovereign immunity is a much broader concept.

---

[4] The State does not argue that its immunity should be treated differently under the Eleventh Amendment and state law.

5

The Eleventh Amendment "render[s] states and their agencies immune from suits brought by private parties in federal court" and places "a jurisdictional limitation on the power of federal courts." In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004). However, state sovereign immunity is not absolute. In Lapides v. Bd. of Regents of Univ. Sys. of Georgia, the Supreme Court held that where a state voluntarily invokes a federal court's jurisdiction by removing the case to federal court, it waives its Eleventh Amendment immunity from suit. 535 U.S. 613, 618 (2002).

Nonetheless, the scope of this waiver is unsettled. In a case predating Lapides, the Second Circuit found that "a party sued by the United States may recoup damages so as to reduce or defeat the government's claim though no affirmative judgment can be rendered against the United States." United States v. Forma, 42 F.3d 759, 765 (2d Cir. 1994) (quoting In re Greenstreet, Inc., 209 F.2d 660, 663 (7th Cir. 1954)).

Three questions arise with respect to these holdings. First, does the rule in Forma apply to states as well as to the federal government? Second, does Forma, or any other case, specifically limit the scope of waiver to recoupment counterclaims, or extend to all compulsory counterclaims? Third,

6

does CSC here seek affirmative relief—apparently impermissible under Forma—or the defensive/recoupment relief upheld in Forma?

With respect to the first question, the Court will only consider whether a counterclaim for *affirmative* relief may fall within the bounds of a waiver of state sovereign immunity. Recoupment generally "means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 146 (2d Cir. 2002). "Recoupment is in the nature of a defense," and the typical situation in which it "can be invoked involves a credit and debt arising out of a transaction for the same goods or services." In re Malinowski, 156 F.3d 131, 133 (2d Cir. 1998). Contribution/indemnification, on the other hand, exists "when two or more tort-feasors share in responsibility for an injury in violation of duties they respectively owed to the injured person." State of N.Y. v. City of Johnstown, N.Y., 701 F. Supp. 33, 37 (N.D.N.Y. 1988).

While it is clear that recoupment counterclaims are defensive in nature, see Forma, 42 F.3d at 765, it is less clear whether contribution/indemnification claims are properly characterized as defensive or affirmative, particularly here, where Defendant asserts them against one plaintiff based on its

7

potential liability to a *separate* plaintiff.[5] See <u>New York v.</u>
<u>Gen. Elec. Co.</u>, No. 1:14-CV-747, 2015 WL 12748007 (N.D.N.Y.
Sept. 29, 2015) (finding that a contribution counterclaim was
*not* one for affirmative relief, at least where it was asserted
against the same party originally seeking damages from the
counterclaimant).

The Court need not resolve this issue, however, because CSC
does not dispute that it seeks affirmative rather than defensive
relief; instead, it argues that the scope of waiver extends to
*all* compulsory counterclaims. (<u>See</u> CSC Opp'n at 7.) Thus, the
Court assumes that CSC's counterclaim is affirmative, and only
considers whether a counterclaim for affirmative relief may
nonetheless fall within the bounds of a waiver. <u>Wang v.</u>
<u>Feinberg</u>, No. 17 CIV. 1452 (DAB), 2018 WL 1089293, at *8
(S.D.N.Y. Feb. 6, 2018) ("Plaintiffs do not bother to respond to
this argument . . . and thus, may be found to have conceded the
issue.").

The next two questions—whether the <u>Forma</u> rule is limited to
counterclaims for recoupment, and whether this rule applies
equally to states—are unsettled, and rarely discussed
separately. Thus, the Court will examine whether the compulsory

---

[5] This is because Defendant here does not seek to reduce/defeat
the State's claim, but limit its exposure to liability with
respect to the Government.

counterclaim asserted here[6] may be jurisdictionally maintained
against the State.

The uncertainty surrounding Forma's application to state
plaintiffs is part of a broader debate about whether concepts of
federal sovereign immunity apply with the same force to state
sovereigns, or whether the doctrines differ in their contours.
See, e.g., California v. Deep Sea Research, Inc., 523 U.S. 491,
493 (1998)("[T]his Court has recognized a correlation between
sovereign immunity principles applicable to States and the
Federal Government."); Texas v. Caremark, Inc., 584 F.3d 655,
659 n.1 (5th Cir. 2009)("[T]here is no reason to distinguish
between waiver asserted by the United States and that asserted
on the basis of state sovereign immunity."); New York v. Gen.
Elec. Co., No. 1:14-CV-747, 2015 WL 12748007, at *7 n.10
(N.D.N.Y. Sept. 29, 2015)("[T]he undersigned concludes that
rationale set forth in Forma applies equally to claims brought
against the states and to the states' Eleventh Amendment
immunity."). Cf Lapides, 535 U.S. at 623 (distinguishing cases
where the United States is the plaintiff from those where a

---

[6] The State asks the Court not to treat CSC's counterclaim as
compulsory, but does not explain why it is not. Indeed, because
the claim arises out of the same transaction or occurrence as
the claims asserted against CSC by Intervenors—CSC's allegedly
fraudulent efforts to secure reimbursement from Medicaid through
"9Nine" and "0Fill" schemes—it undoubtedly does arise out of
same transaction.

state is plaintiff because the former "do not involve the
Eleventh Amendment—a specific text with a history that focuses
upon the State's sovereignty vis-à-vis the Federal
Government.").

The Court has found one case in the Second Circuit that
applied the <u>Forma</u> rule to a state plaintiff post-<u>Lapides</u>, albeit
while holding that the contribution counterclaim in that case
was one for defensive, and not affirmative, relief. <u>See</u> <u>New York</u>
<u>v. Gen. Elec. Co.</u>, No. 1:14-CV-747, 2015 WL 12748007 (N.D.N.Y.
Sept. 29, 2015). But the Second Circuit has also found that,
post-<u>Lapides</u>, "[m]ost circuits agree . . . that when a state
files a proof of claim, it waives its immunity as to . . .
compulsory counterclaims." <u>In re Charter Oak Assocs.</u>, 361 F.3d
760, 768 (2d Cir. 2004). In fact, in <u>Charter Oaks</u>, the Second
Circuit held that the state's filing of a proof of claim waived
not only its immunity with respect to *compulsory* counterclaims,
but certain permissive claims, as well. <u>Id.</u> at 769.

To be sure, post-<u>Lapides</u>, the vast majority of courts have
found that the scope of a state plaintiff's waiver of sovereign
immunity extends to *all* compulsory counterclaims, not solely
those seeking recoupment or defensive relief. <u>See</u> <u>Charter Oaks</u>
361 F.3d at 768; <u>Regents Of Univ. Of New Mexico v. Knight</u>, 321
F.3d 1111, 1126 (Fed. Cir. 2003)("[T]he compulsory counterclaim

criterion is superior to the recoupment criterion for
determining waiver of immunity with respect to counterclaims.");
State of N.Y. v. City of Johnstown, N.Y., 701 F. Supp. 33, 37
(N.D.N.Y. 1988)("While the State argues that it is not subject
to a counterclaim of any sort under the doctrine of sovereign
immunity, compulsory counterclaims such as this one can be
asserted against a sovereign."); Bd. Of Regents of Univ. Of
Wisconsin Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448,
469 (7th Cir. 2011)(rejecting the recoupment/affirmative relief
limitation, and finding that "a waiver of sovereign immunity
encompasses *all* compulsory counterclaims.").

These holdings are in line with the trend occurring among
circuit courts pre-Lapides, as well. See Arecibo Cmty. Health
Care, Inc. v. Commonwealth of Puerto Rico, 270 F.3d 17, 28 (1st
Cir. 2001) ("Where a state avails itself of the federal courts
to protect a claim, we . . . construe that waiver to encompass
compulsory counterclaims, even though they could require
affirmative recovery from the state."); In re Straight, 143 F.3d
1387, 1389-90 (10th Cir. 1998)(state's filing of proof of claim
in bankruptcy waives state's immunity with respect to compulsory
counterclaims); In re Creative Goldsmiths of Washington, D.C.,
Inc., 119 F.3d 1140, 1148 (4th Cir. 1997)("[T]o the extent a
defendant's assertions in a state-instituted federal action . .
. amount to a *compulsory* counterclaim, a state has waived any

11

Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum."); <u>In re 995 Fifth Ave. Assocs., L.P.</u>, 963 F.2d 503, 509 (2d Cir. 1992) (internal quotation marks omitted)(proof of claim in bankruptcy "provides for waiver of Eleventh Amendment immunity from any claim against the state that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.").

Accordingly, regardless of whether a rule existed limiting a state's immunity to claims for non-affirmative relief *pre-*<u>Lapides</u>, the Court now adopts the clear majority rule and finds that a state plaintiff waives its sovereign immunity to the extent that a defendant asserts a compulsory counterclaim, as defined by Fed. R. Civ. P. 13(a)—irrespective of whether that counterclaim is for affirmative or defensive relief. Because here, the State does not explain why CSC's counterclaim should not be considered compulsory—and because it CSC's counterclaim indeed arises from the same transaction or occurrence as the State's claims against CSC—the Court finds that the State has waived its sovereign immunity by voluntarily intervening in this action, and that jurisdiction exists with respect to the Counterclaim.

b. 12(b)(6)

i. Legal Standard

The Court must now determine whether the Counterclaim can survive on the merits. For a claim to survive a motion brought pursuant to Rule 12(b)(6), the Party advancing it must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

13

> assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Gerdau Ameristeel U.S. Inc. v. Ameron Int'l Corp., No. 13-CV-7169, 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014) ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." (citations omitted)). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the Complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman

14

v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations
omitted).

          ii. Analysis

     The State argues that FCA defendants cannot pursue claims
for contribution or indemnification that are based on their
liability under the FCA. CSC, in response, argues that the
application of the State's proposed rule is solely confined to
counterclaims against relators—not intervenors, like the State—
as well as counterclaims for damages in relation to federal FCA
fraud claim liability.

     The case on which the State primarily relies for its
argument is a Ninth Circuit case in which the court found that
(1) the FCA, by its own terms, does not provide a right to
contribution or indemnification, and (2) federal common law does
not authorize creation of such a rule where the FCA "includes
comprehensive procedures for enforcement" and the FCA
defendant's "right of recovery from another wrongdoer" does not
implicate strong federal interests. Mortgages, Inc. v. U.S.
Dist. Court for Dist. of Nev. (Las Vegas), 934 F.2d 209, 213-14
(9th Cir. 1991); see id. at 213 ("The FCA is in no way intended
to ameliorate the liability of wrongdoers by providing
defendants with a remedy against a qui tam plaintiff with
'unclean hands.'").

Later, the Ninth Circuit clarified that while *independent* counterclaims brought by FCA defendants may be sustained, "claims that merely indemnify [a defendant] for its FCA liability or seek contribution for the same"—i.e., dependent counterclaims—"must be dismissed if [the defendant] is liable under the FCA." Cell Therapeutics, Inc. v. Lash Grp., Inc., 586 F.3d 1204, 1210 (9th Cir. 2009). Notwithstanding the state's reliance on these Ninth Circuit cases, support for the bar on indemnification/contribution counterclaims by FCA defendants may be found in Second Circuit and other cases, as well. See, e.g., U.S. ex rel. Mikes v. Straus, 931 F. Supp. 248, 261-62 (S.D.N.Y. 1996); U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc., 505 F. Supp. 2d 20, 26 (D.D.C. 2007); U.S. ex rel. Pub. Integrity v. Therapeutic Tech. Inc., 895 F. Supp. 294, 297 (S.D. Ala. 1995).

CSC, in response, argues that the State's cited cases merely stand for the proposition that there is a bar on indemnification/contribution claims brought against FCA *relators*, and not, as here, an intervenor. However, nothing in these cases supports such a limitation, and, indeed, the State provides examples of many cases applying the same bar to parties other than FCA relators. See, e.g., Therapeutic Tech., 895 F. Supp. 294 (third party claim for indemnification barred); U.S. v. Nardone, 782 F. Supp. 996 (M.D. Pa. 1990) (claim against

16

third party and federal government FCA plaintiff for
indemnification barred); <u>United States v. Warnings</u>, No. CIV. A.
93-4541, 1994 WL 396432, at *8 (E.D. Pa. July 26, 1994) (finding
no right to contribution for third party plaintiffs).

CSC provides no authority supporting its proposed
limitation, other than arguing that the Ninth Circuit in <u>Cell
Therapeutics</u> found that counterclaims against non-relator
parties were not *foreclosed* under the <u>Mortgages</u> rule. But
finding that certain third party claims are not foreclosed is
not the same as authorizing all such claims, and, to be sure,
the <u>Cell Therapeutics</u> court found that claims against non-
relator parties were only allowed to the extent that these
claims were either independent claims or dependent claims that
did not follow a finding of FCA liability. <u>See Cell
Therapeutics</u>, 586 F.3d at 1209.

CSC next claims that any bar on FCA counterclaims does not
apply because (1) the State is only suing CSC under the NY FCA
and on state law restitution claims, and (2) a portion of the
*Government*'s claim against CSC involves unjust enrichment, and
thus, does not implicate the FCA.

With respect to the first argument, the bar on
indemnification/contribution claims relates to claims that have
the effect of offsetting FCA liability, as CSC attempts to do
here with respect to its potential liability on the Government's

17

FCA claims. As such, the Court is not convinced that the content of the *State*'s claims against CSC have any relevance to this rule. But even if they did, the Court sees no reason to treat the NY FCA any differently than the federal FCA in this context— nor does CSC provide any case law to support such a position. See <u>U.S. ex rel. Bilotta v. Novartis Pharms. Corp.</u>, 50 F. Supp. 3d 497, 509 ("The NY FCA, enacted on April 1, 2007, is closely modeled on the federal FCA." (internal quotations and citation omitted)); <u>State of N.Y. ex rel. Seiden v. Utica First Ins. Co.</u>, 96 A.D.3d 67 (1st Dep't 2012) ("The NYFCA follows the federal False Claims Act (FCA) and therefore it is appropriate to look toward federal law when interpreting the New York act." (internal citations omitted)).

CSC's second argument, however, holds water. The rule in <u>Mortgages</u> and the related cases applies only to claims for indemnification/contribution with respect to a defendant's liability under the FCA. See <u>Cell Therapeutics</u>, 586 F.3d at 1210 ("The restrictions in <u>Mortgages</u> do not extend to damages for claims other than those for fraud under the FCA."). Moreover, the distinction between independent and dependent claims that the State discusses in its brief relates only to whether counterclaims may proceed irrespective of an eventual finding of FCA liability; the distinction is meaningless when the

counterclaim damages do not relate to underlying FCA claims.[7] <u>See</u> <u>id.</u> ("The liability for which the <u>Mortgages</u> court barred indemnification was solely for fraud or conspiracy to commit fraud under the FCA.").

More significantly, finding CSC liable with respect to the Government's unjust enrichment claim would not, contrary to the State's arguments, require a concomitant finding of liability with respect to the FCA claims: "[t]he FCA requires knowledge that the claims for payment were fraudulent, whereas the unjust enrichment . . . claims do not."[8] <u>Cell Therapeutics</u>, 586 F.3d at 1210. While CSC's counterclaim indeed depends entirely on its liability to the Government, to the extent that this liability does not relate to the Government's FCA claims but the unjust enrichment claim, the counterclaim may proceed.

---

[7] Indeed, there is no doubt that the claims here for indemnification and contribution belong to the dependent category. <u>Cell Therapeutics</u>, 586 F.3d at 1209.

[8] "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296 (2d Cir. 2004).

3. Conclusion

For the reasons described above, the State's Motion to Dismiss CSC's counterclaim is GRANTED in part and DENIED in part. CSC's counterclaim is DISMISSED to the extent that it relates to CSC's liability on the Government's FCA claims against it. However, the Counterclaim may proceed solely with respect to CSC's potential liability in relation to the Government's unjust enrichment claim.

SO ORDERED.

Dated: New York, NY

September 20, 2018

*Deborah A. Batts*
Deborah A. Batts
United States District Judge