UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA and STATE OF NEW YORK *ex rel.* NICHOLS,

Plaintiffs,

v.

COMPUTER SCIENCES CORPORATION and CITY OF NEW YORK,

Defendants.

---

12 Civ. 1750 (JSR)(DCF)

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL AS TO DEFENDANT THE CITY OF NEW YORK**

A. WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or "Government"), by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York; the relator, Oma Nichols, as Personal Representative of the Estate of Vincent Forcier ("Relator");[1] and defendant the City of New York (the "City," and together with the Government and Relator, the "Settling Parties"), by its authorized representatives;

B. WHEREAS, on or about March 10, 2012, then relator Vincent Forcier initiated this case by filing a complaint under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against the City and its co-defendant Computer Sciences Corporation ("CSC");

C. WHEREAS, on December 12, 2014, then relator Vincent Forcier filed a Second Amended Complaint (the "Relator Complaint") alleging, *inter alia*, that the City and CSC violated the FCA, and CSC violated the New York False Claims Act, in connection with submitting claims

---

[1] This case was initiated by the late Vincent Forcier, who passed away in 2019. Ms. Oma Nichols, as personal representative of the estate of Vincent Forcier, was then substituted for Mr. Forcier as the Relator in this action.

for early intervention program ("EIP") services to New York's Medicaid program established pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* ("NY-Medicaid");

D. WHEREAS, the Government and the State of New York (the "State") intervened in this case in September 2014;

E. WHEREAS, on October 27, 2014, the Government filed a complaint-in-intervention (the "US Complaint"), alleging that from January 1, 2007, through on or about December 31, 2013, *i.e.*, the last date on which CSC submitted a claim to NY-Medicaid for EIP services on behalf of the City (the "Covered Period"), the City violated the FCA by submitting, or causing to be submitted, claims for payment for EIP services to NY-Medicaid in violation of federal and New York State requirements, including in violation of 18 N.Y.C.R.R. § 540.6(e)(3)(v), which provided during the Covered Period that providers shall take "reasonable measures necessary to assure that no claims are submitted to [NY-Medicaid] that could be submitted to another source of reimbursement;"

F. WHEREAS, the US Complaint specifically alleged that the City (i) submitted or caused to be submitted claims for EIP services to NY-Medicaid before reasonable measures had been taken to ascertain the legal liability of third parties, including private insurance, to pay for those services; (ii) defaulted EIP beneficiaries' policy IDs to 999-999-999 on claims for EIP services submitted to private insurers, and thereafter submitted or caused to be submitted claims to NY-Medicaid before reasonable measures had been taken to ascertain private insurance coverage; (iii) submitted or caused to be submitted claims to NY-Medicaid that contained the "0Fill" modifier or other information indicating an adjudication by private insurers had been received before CSC or the City had in fact received such an adjudication; and (iv) submitted or caused to be submitted claims for EIP services to NY-Medicaid with a default ICD-9 diagnosis code, 315.9, instead of the codes reported by providers who rendered services to the EIP

2

beneficiaries. The conduct described in this paragraph comprises the "Covered Conduct" for purposes of this Stipulation;

G.   WHEREAS, the City and CSC filed motions to dismiss the US Complaint as well as the Relator Complaint, and the Government and the relator at the time, Vincent Forcier, opposed those motions;

H.   WHEREAS, in its motion to dismiss, the City contended that a federal statute, 42 U.S.C. § 1396a(a)(25)(E), exempted it from the requirements of 18 N.Y.C.R.R. § 540.6(e) to take reasonable measures to ascertain the legal liability of third parties to provide coverage for EIP services, and required New York State to pay for such services without regard to the liability of a third party for payment;

I.   WHEREAS, on April 28, 2016, the Court issued a memorandum and order (the "4/28/16 MTD Decision"), granting defendants' motions to dismiss as to the Government's claim alleging the use of the 315.9 default diagnosis code, but denying those motions as to the Government's remaining claims;

J.   WHEREAS, in denying defendants' motion to dismiss the Government's claim alleging defendants' failure to comply with 18 N.Y.C.R.R. § 540.6(e), the Court held that CSC and the City were required "to take reasonable measures" to ascertain the legal liability of third parties, including private insurance, for providing coverage for EIP services "prior to billing Medicaid" under 18 N.Y.C.R.R § 540.6(e), *see* 4/28/16 MTD Decision 28-30;

K.   WHEREAS, on September 6, 2016, the Government filed an amended complaint (the "Amended US Complaint") to add a claim solely against CSC;

L.   WHEREAS, the Settling Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against the City in the Amended US Complaint and the Relator Complaint, for the Covered Conduct;

3

NOW, THEREFORE, upon the Settling Parties' agreement IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1. The Settling Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2. The City admits, acknowledges and accepts responsibility for the following conduct alleged in the Amended US Complaint:

    a. From 1996 through 2013, the City, through its Department of Health and Mental Hygiene ("DOHMH"), was responsible for the provision of EIP services to eligible children in New York City, including preparing individualized family service plans, contracting with and paying treating providers such as audiologists and speech therapists who delivered EIP services, and seeking reimbursement for the EIP services provided to eligible children.

    b. Funding for EIP services provided to eligible children in New York City was available from, among other sources, private insurance, NY-Medicaid, and the EIP funds administered by the New York State Department of Health ("SDOH-EIP Funds").

    c. In 2005, the City issued a request for proposal ("RFP") seeking a new fiscal agent for EIP. A predecessor of CSC was one of the contractors who responded to that RFP.

    d. From 2005 to 2007, the City and CSC engaged in discussions about the City's expectations for CSC as the City's EIP fiscal agent. During those discussions, DOHMH advised CSC that when seeking reimbursement for EIP services for an eligible child who had health coverage from both private insurance and Medicaid ("dual-eligible EIP beneficiary"), the sequence of billing was to be: 1) private insurance; 2) NY-Medicaid; and 3) the SDOH-EIP Funds.

    e. In September 2007, the City and CSC signed a fiscal agent contract. After the execution of that contract, CSC began developing systems and computer programs for the City.

    f. Starting in or around 2007, DOHMH created a "Revenue Maximization Unit" for the EIP (the "RMU"). The RMU's function was to "maximize fund recovery," including, specifically, to conduct follow-up on EIP claims that had been denied by NY-Medicaid, private insurers, or the SDOH-EIP Funds.

    g. The RMU used a computer portal, or a "Gateway," maintained by CSC to

4

determine which claim denials needed follow-up research or investigation. The RMU did not have a repository or database to track or maintain information regarding its investigations into denied claims. Thus, DOHMH did not systematically track how many claim denials the RMU had investigated, or which claims it was unable to investigate due to volume or missing records, and therefore did not provide such information to CSC on a systematic basis.

h. From 2009 to 2012, DOHMH received reports from CSC that there had been no responses from private insurers for EIP claims involving dual-eligible EIP beneficiaries. In a significant number of such cases, DOHMH did not inquire with private insurers to determine the cause(s) for their lack of response, and did not direct CSC to so inquire.

i. In or about September 2010, DOHMH approved a proposal by CSC to populate the EIP database CSC developed for DOHMH with "dummy denial records" when claims to private insurers had been pending for 90 days without an adjudication. DOHMH also approved CSC's submission of such claims to NY-Medicaid with the "0Fill" modifier, which, according to NY-Medicaid's 837 Institutional Healthcare Claim Supplemental Companion Guide, was to be used either for "when it is known that the primary payer or any other payer prior to Medicaid[] does not cover the services and so will not pay any amount towards the claim," or for claims that "have been denied (the services were not covered) or were paid zero (the entire charge was adjusted, for example, applied to deductible) by any prior payer."

j. In 2011, the City and CSC agreed to continue these procedures, but with the 90-day period extended to 120 days.

k. As result of the foregoing, the City received payments from NY-Medicaid for EIP services that NY-Medicaid would not otherwise have made pursuant to its payment regulations and procedures.

3. Within sixty (60) business days of the latter of the Effective Date (as defined below in Paragraph 28 below) or the date on which the City receives payment instructions from the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York, the City shall pay to the Government the sum of $925,000.00 (the "Settlement Amount"). Of the Settlement Amount, $462,500.00 constitutes restitution to the United States.

4. The City agrees to cooperate fully and truthfully with the Government's investigation of individuals and entities not released in this Stipulation. Upon reasonable notice, the City shall encourage, and agrees not to impair, the cooperation of its directors, officers, and

5

employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. The City further agrees to furnish to the Government, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

5. Subject to the exceptions in Paragraphs 9 and 15 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon the City's full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the Government pursuant to Paragraph 3 above, the United States releases the City, including its agencies, subsidiaries, and corporate predecessors, successors and assigns, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Stipulation does not release any current or former officer, employee, or agent of the City from liability of any kind.

6. The City fully and finally releases the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the City has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the Government's investigation, prosecution and settlement thereof.

7. Conditioned on the City's timely payment of the full Settlement Amount pursuant to Paragraph 3 above, Relator, Oma Nichols, as Personal Representative of the Estate of Vincent

Forcier, on behalf of the Estate of Vincent Forcier (the "Estate"), and the Estate's heirs, successors, attorneys, agents and assigns, as well as any other person or entity acting on the Estate's behalf, fully and finally releases, waives, and forever discharges the City, including its agencies, subsidiaries and corporate predecessors, successors and assigns, as well as all of its current and former officers, directors, employees, attorneys, and other agents, from any and all manner of claims or allegations the Relator has or may have on behalf of the Government under the FCA, 31 U.S.C. §§ 3729-3733 for the Covered Conduct, and from any liability, claims, demands, proceedings, liens, and causes of action of any kind, whether known or unknown, fixed or contingent, in law or in equity, in contract or tort, under any federal or state statute or regulation, or under common law, or that Relator otherwise would have standing to bring, against the City including, without limitation (except as set forth in the final clause of this Paragraph), any liability arising from or relating to claims Relator, or Vincent Forcier, prior to substitution of Oma Nichols, as Personal Representative of the Estate of Vincent Forcier as Relator in this action, asserted or could have asserted against the City based on the Covered Conduct or the allegations in Relator's initial Complaint, Relator's Amended Complaint, and/or Relator's Second Amended Complaint; provided, however, that nothing in this Paragraph or Stipulation shall release or otherwise waive any claim against the City that Relator asserts for reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d).

      8.     In consideration of the execution of this Stipulation by Relator and Relator's release as set forth in Paragraph 7 above, the City, including its agencies, subsidiaries, predecessors, and corporate successors and assigns, as well as all of its current and former officers, directors, employees, attorneys, and other agents, acting in their official capacity, release Relator and her successors, heirs, assigns, attorneys, and other agents, acting in their official capacity, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that

7

the City has against Relator related to or arising from the Relator Complaint. Nothing in this Paragraph or this Stipulation shall be construed in any way to release, waive, or otherwise affect the ability of the City to challenge or object to any claim Relator asserts for attorneys' fees, expenses, and costs.

9. Notwithstanding the releases given in Paragraph 5 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

   a. any liability arising under Title 26, United States Code (Internal Revenue Code);
   b. any criminal liability;
   c. except as explicitly stated in this Stipulation, any administrative liability, including but not limited to the mandatory or permissive exclusion from Federal health care programs (as defined in 42 U.S.C. §1320a-7b(f)) under 42 U.S.C. §1320a-7(a) (mandatory exclusion) or 42 U.S.C. §1320a-7(b) (permissive exclusion);
   d. any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;
   e. any liability based upon obligations created by this Stipulation; and
   f. any liability of individuals.

10. The City shall be in default of this Stipulation if the City fails to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if it fails to comply materially with any other term of this Stipulation that applies to it ("Default"). The Government shall provide written notice to the City of any Default in the manner set forth in Paragraph 28 below. The City shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured

8

Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default. In the event of an Uncured Default, the City shall agree to the entry of a consent judgment in favor of the United States against the City in the amount of the Settlement Amount as attached hereto as Exhibit A. The United States may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against the City in the Government Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing the City by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. The City shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, the City shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, the City shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

11. Relator and the Estate's heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation; Relator agrees and confirms that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

12. The City agrees that it waives and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

13. The City waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

14. The City represents and warrants that it has reviewed its financial situation, that it is currently not insolvent as such term is defined in 11 U.S.C. § 101(32) and that it reasonably believes that it shall remain solvent following payment to the Government of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the City, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Settling Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the City was or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

15. If within 91 days of the Effective Date of this Stipulation or any payment made under this Stipulation, the City commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of the City's debts, or seeking to adjudicate the City as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee,

custodian, or other similar official for the City or for all or part of the City's assets, the City agrees as follows:

   a. The City's obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and the City shall not argue or otherwise take the position in any such case, action, or proceeding that (i) the City's obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) the City was insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to the City.

   b. If any of the City's obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the release in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against the City for the claims that would otherwise be covered by the release in Paragraph 5 above. The City agrees that (i) any such claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and the City shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay; (ii) the City shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to the City that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 10, 2012; and (iii) the Government has a valid claim against the City in the amount of the Settlement Amount and the Government may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

   c. The City acknowledges that the agreements in this Paragraph are provided in

11

exchange for valuable consideration provided in this Stipulation.

16. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

17. The City agrees to the following:

    a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendant, including its present or former officers, directors, employees, and agents in connection with:

        (1) the matters covered by this Stipulation;

        (2) the United States' audit(s) and civil investigation(s) of matters covered by this Stipulation;

        (3) the City's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

        (4) the negotiation and performance of this Stipulation; and

        (5) any payment the City makes to the United States pursuant to this Stipulation and any payment the City may make to the Relator, including expenses, costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by the City, and the City shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, the City shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by the City from the United States. The City agrees that the United States, at a minimum, shall be entitled to recoup from the City any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine the City's books and records and to disagree with any calculation submitted by the City or any of its affiliates regarding any Unallowable Costs included in payments previously sought by the City, or the effect of any such Unallowable Costs on the amounts of such payments.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the City's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

18.   This Stipulation is intended to be for the benefit of the Settling Parties only. The Settling Parties do not release any claims against any other person or entity except as otherwise provided herein. Nothing herein precludes the release of claims as set forth in a separate

Stipulation and Order of Settlement and Dismissal being entered into in this case between the United States, the State of New York, Relator, and/or CSC, or precludes any agreement between the City and CSC providing for the release of claims or potential claims.

19. Each Settling Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, nothing in this Stipulation shall preclude Relator from seeking to recover her expenses or attorneys' fees and costs from the City and CSC, pursuant to 31 U.S.C. § 3730(d).

20. Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

21. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Settling Parties to this Stipulation and shall not, therefore, be construed against any Settling Party for that reason in any subsequent dispute.

22. This Stipulation constitutes the complete agreement between the Settling Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Settling Parties.

23. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

24. This Stipulation is binding on the City's successor entities.

25. This Stipulation is binding on Relator, and the Estate's successors, transferees, heirs, and assigns.

26. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

27. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Li Yu and Arastu Chaudhury
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email: li.yu@usdoj.gov


TO THE CITY:

Joseph V. Willey and Elizabeth D. Langdale
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
Email: joseph.willey@katten.com
       elizabeth.langdale@katten.com

Stephen Kitzinger
New York City Law Department, Office of the Corporation Counsel
Assistant Corporation Counsel
100 Church Street
New York, NY 10007
Email: skitzing@law.nyc.gov

TO RELATOR:

Shelley Slade
Vogel Slade & Goldstein LLP
1300 Connecticut Ave., #701
Washington, DC 20036
Email: sslade@vsg-law.com

28. The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court and filed on the ECF docket (the "Effective Date").

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: New York, New York
       July 28, 2020

By: _____
    LI YU
    ARASTU CHAUDHURY
    Assistant United States Attorneys
    86 Chambers Street, Third Floor
    New York, New York 10007
    Tel.: (212) 637-2734/2633
    Fax: (212) 637-2686

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

*Attorneys for the United States*

16

**RELATOR**

Dated: ___7-24___, 2020
      July __, 2020

By: _[signature]_
OMA NICHOLS
as Personal Representative of
the Estate of Vincent Forcier

Dated: Washington, D.C.
       July 27, 2020

VOGEL SLADE & GOLDSTEIN, LLP

By: _[signature]_
SHELLEY SLADE, ESQ.
1300 Connecticut Ave., #710
Washington, DC  20036

*Attorney for Relator*

17

**DEFENDANT THE CITY**

Dated: New York New York
       July 21, 2020

| | |
|---|---|
| JAMES E. JOHNSON<br>CORPORATION COUNSEL OF THE CITY<br>OF NEW YORK<br><br>By: _____<br>Stephen Kitzinger<br>Assistant Corporation Counsel<br><br>100 Church Street<br>New York, NY 10007<br>Tel: (212) 356-2087 | KATTEN MUCHIN ROSENMAN LLP<br><br>By: _____<br>Joseph V. Willey<br><br><br><br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800 |

*Attorneys for Defendant The City of New York*

SO ORDERED:

_____
HON. JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

Dated: 7/28, 2020